

**FILED & ENTERED**

**AUG 14 2017**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY penning    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re: Crystal Waterfalls LLC, Debtor | Case No.: 2:15-bk-27769-ER<br>Adv. No.: 2:15-ap-01671-ER |
| **Complaint:**<br>Crystal Waterfalls, LLC,<br>　　　　　　　　　　　Plaintiff<br>　　　　v.<br>HCL 2011, LLC,<br>　　　　　　　　　　　Defendant | **MEMORANDUM OF DECISION DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE FIRST THROUGH TENTH CLAIMS IN THE COUNTERCLAIM** |
| **Counterclaim:**<br>HCL 2011, LLC,<br>　　　　　　　　　Counter-Claimant<br>　　　　v.<br>Crystal Waterfalls, LLC, Lucy Gao, Shelby Ho, and Benjamin Kirk,<br>　　　　　　　　Counter-Defendants | |
| **Crossclaim:**<br>Crystal Waterfalls, LLC,<br>　　　　　　　　　Cross-Claimant<br>　　　　v.<br>Shelby Ho and Benjamin Kirk,<br>Cross-Defendants | [No hearing required pursuant to Federal Rule of Civil Procedure 78(b) and Local Bankruptcy Rule 9013-1(j)(3)] |

On July 11, 2017, the Court issued an order requiring Counterclaimant HCL to submit further briefing showing cause why the Court should not decline to exercise supplemental jurisdiction over certain of the claims asserted in the Counterclaim. Having reviewed the additional briefing submitted by HCL and the response submitted by Shelby Ho, the Court declines to exercise supplemental jurisdiction over the first through tenth claims in the Counterclaim.

## I. Background

This litigation concerns commercial property located at 1211 East Garvey Street, Covina, California (the "Hotel"), which the Debtor, Crystal Waterfalls ("Crystal"), operated as a Park Inn by Radisson Hotel. On December 2, 2016, the Court approved the sale of the Hotel to Ganyu Huang and LVGEM Investment, LLC for $22.6 million. *See* Order Approving Debtor's Motion for Order Authorizing and Approving the Sale of Assets Free and Clear of Liens (the "Sale Order") [Bankruptcy Doc. No. 284]. On January 24, 2017,the sale closed.

On March 24, 2017, Crystal filed a "Second Amended Complaint for (1) Cancellation of Written Instrument, (2) Quiet Title, (3) Avoidance of Fraudulent Transfer (11 U.S.C. §544), and (4) Declaratory Relief" (the "Complaint") [Doc. No. 142] against HCL 2011 LLC ("HCL"). In the Complaint, Crystal alleges that HCL, acting through Benjamin Kirk ("Mr. Kirk"), recorded an unauthorized grant deed (the "Grant Deed") transferring the Hotel to Washe, LLC ("Washe"). Crystal alleges that Washe, acting through Shelby Ho ("Ms. Ho"), then recorded an unauthorized deed of trust (the "Deed of Trust") against the Hotel and in favor of HCL, which purported to secure a $28.5 loan from HCL to Washe. Crystal alleges that neither it or Washe ever entered into a loan agreement with HCL, ever received any funds from HCL, or ever received any benefit from recordation of the Deed of Trust. Crystal seeks to set aside the Deed of Trust and seeks a declaration that HCL has no interest in the Hotel.

On November 22, 2015, Lucy Gao ("Ms. Gao"), as managing member of Crystal, and Mr. Kirk, as managing member of Washe, executed a stipulation under which Washe agreed that the Grant Deed was void and of no force or effect, and that title to the Hotel would revest in the name of Crystal (the "Stipulation"). No stipulation was executed with respect to the Deed of Trust. The Court approved the Stipulation invalidating the Grant Deed on November 30, 2015. Bankruptcy Doc. No. 27.

On May 26, 2017, HCL filed a second amended counterclaim against Crystal, Ms. Gao, Mr. Kirk, and Ms. Ho (the "Counterclaim"). The allegations of the Counterclaim are as follows:

1) Beginning in 2008, Ms. Ho has acted as Sophia Huang's real estate broker in several successful purchases of investment properties. After the financial crisis of 2008–09, Ms. Ho suggested that Ms. Huang and her family members (collectively, the "Lee Investors") purchase distressed real estate in California through Liberty Asset Management Corporation ("Liberty"). Liberty is controlled by Benjamin Kirk and Lucy Gao; both Mr. Kirk and Ms. Gao manage the business operations and have signature authority over Liberty's bank accounts. Mr. Kirk, Ms. Gao, and Ms. Ho worked as a team in promoting the sale of distressed real estate to investors through entities they controlled (such entities and Liberty, the "LAMC Group"). Complaint at ¶12.

2) Mr. Kirk, Ms. Gao, and Ms. Ho agreed to a scheme under which Ms. Ho would make recommendations to Ms. Huang regarding the availability and profitability of certain real estate investments offered by Liberty. Mr. Kirk, Ms. Gao, and Ms. Ho never intended to purchase such real estate for Ms. Huang. The purpose of Ms. Ho's representations was to

induce Ms. Huang and the Lee Investors to transfer their investment funds to Liberty. *Id.* at ¶13.

3) In 2010, Ms. Ho and Mr. Kirk presented the following plan to Ms. Huang: (a) Ms. Ho and the LAMC Group would identify and recommend to Ms. Huang distressed real estate (the "Target Property"); (b) the parties would sign an agreement, with Liberty as seller, and a new entity set up by Liberty for the Lee Investors as buyer, to acquire the Target Property; (c) the Lee Investors would deposit the purchase price into an escrow account pursuant to Ms. Ho's instructions, and the funds would be used to purchase the Target Property specified in the agreement; (d) if the LAMC Group was successful in purchasing the Target Property from the bank or at a foreclosure sale, title to the Target Property would be transferred to the new entity owned by the Lee Investors; and (e) if the LAMC Group was unsuccessful in acquiring the Target Property, the investment funds deposited in escrow would be immediately refunded to the Lee Investors. *Id.* at ¶14.

4) In 2012 and 2013, based on the representations made by Mr. Kirk and Ms. Ho, the Lee Investors signed seven agreements with the LAMC Group to acquire distressed real estate. The out-of-pocket investment made by the Lee Investors was $27 million. However, the LAMC Group did not purchase any of the Target Properties specified in the seven agreements. In each transaction, Ms. Ho instructed the Lee Investors to deposit the investment funds into designated escrow accounts, but did not disclose that certain of the purported escrow companies were actually owned or controlled by the LAMC Group. Ms. Ho represented that the investment funds deposited into escrow would be earmarked for the purchase of the Target Properties. Upon receipt of the investment funds from the Lee Investors, the LAMC Group immediately withdrew the funds from the escrow account and disbursed the funds either to Mr. Kirk, Ms. Gao, and/or Ms. Ho for personal purposes, or to other entities within the LAMC Group. *Id.* at ¶18.

5) Ms. Ho continuously made representations to Ms. Huang that the investment funds had been used to purchase the Target Properties, or that the purchase of the Target Properties was underway. Ms. Ho concealed that the investment funds had in fact been diverted by Mr. Kirk, Ms. Gao, and Ms. Ho for their own personal purposes. *Id.* at ¶21.

6) Ms. Ho represented to Ms. Huang that she intended to invest millions of dollars in a transaction to purchase Target Properties located on Stockton Street and Montgomery Street in downtown San Francisco. Ms. Ho concealed from Ms. Huang the fact that she had not actually made this investment. *Id.*

7) In 2014, without the knowledge or consent of the Lee Investors, the LAMC Group transferred the Lee Investor's interest in property located at 1122 Tenth Street, Santa Monica, CA 90403 (the "Santa Monica Property") to Maxwell Real Estate Investment, LLC ("Maxwell") for the purpose of repaying certain debts. In early 2015, Maxwell sold the Santa Monica Property for $6 million and shared the sales proceeds with the LAMC Group. The LAMC Group failed to inform the Lee Investors of the sale. To date, the LAMC Group has not turned over any of the sales proceeds to the Lee Investors. *Id.* at ¶¶22–23.

8) In the middle of 2014, the Lee Investors cancelled the seven agreements to purchase Target Properties, and requested refund of their investment. Mr. Kirk and Ms. Ho told Ms. Huang that Liberty agreed to refund the deposits, but did not have the money because all the investment funds had been used for other purposes. This was the first time that Ms. Huang learned that the Lee Investor's investment funds had been diverted by

    Ms. Gao, Mr. Kirk, and Ms. Ho for purposes other than purchasing the Target Properties. *Id.* at ¶27.

9) In 2014, Ms. Ho told Ms. Huang that she would assist the Lee Investors in obtaining the return of the funds they had invested with Liberty. In September 2014, Ms. Ho and her attorney, George Eshoo, formed Washe. Washe's operating agreement stated that Washe was formed for the benefit of Ms. Huang for the purpose of obtaining the return of the Lee Investor's investment funds. Ms. Ho signed Washe's operating agreement.

10) Pursuant to a refund agreement, Mr. Kirk, representing the LAMC Group, transferred legal title to three pieces of real property from three of the LAMC Group's investment entities to Washe. One of the transferred properties was the hotel operated as a Park Inn by Radisson, located at 1211 East Garvey Street, Covina, California, that was sold in Crystal's bankruptcy. Washe promptly recorded deeds of trust on the transferred properties to provide security for the refund due the Lee Investors.

11) In 2015, Mr. Kirk, on behalf of the LAMC Group, signed three settlement agreements to affirm the security arrangement provided to the Lee Investors for the refund of the $28.5 million. *Id.* at ¶30.

12) On November 20, 2015, Washe filed for Chapter 11 bankruptcy. Mr. Kirk signed Washe's petition. Mr. Kirk had no authority to sign the petition since he was not a member of Washe, and Washe's 100% beneficial owners, Ms. Huang and the Lee Investors, did not authorize the bankruptcy filing. *Id.* at ¶32.

13) As noted previously, on November 22, 2015, Ms. Gao, as managing member of Crystal, and Mr. Kirk, purportedly as managing member of Washe, executed a stipulation under which Washe agreed that the Grant Deed which had transferred the Hotel to Washe was void and of no force or effect. The stipulation provided that title to the Hotel would revest in the name of Crystal. The Court approved the stipulation invalidating the Grant Deed on November 30, 2015. Bankruptcy Doc. No. 27. The order approving the stipulation should be vacated because (a) Mr. Kirk had no authority to sign the stipulation on behalf of Washe, (b) Mr. Kirk failed to serve a copy of the stipulation on HCL, a creditor listed in Crystal's bankruptcy case which was adversely affected by the stipulation, and (c) Mr. Kirk failed to disclose to the Court that Washe was also in bankruptcy. *Id.* at ¶34.

14) At the meeting of creditors in Liberty's Chapter 11 case, Mr. Kirk testified that the Lee Investor's investment funds had been used for purposes other than the purchase of the Target Properties, and that Ms. Gao had withdrawn funds from Liberty which she used to purchase real properties held in the name of various investment entities in which Ms. Gao was the sole member. Liberty's schedules identify Crystal as an investment entity set up by the LAMC Group with funds from Liberty. *Id.* at ¶35.

15) On January 25, 2017, Judge Donovan granted a motion for summary judgment filed by Liberty's Official Committee of Unsecured Creditors (the "Committee") in the adversary proceeding *Committee v. Lucy Gao and Benjamin Kirk* (Adv. No. 2:16-ap-01337-ER). Judge Donovan found that Ms. Gao was a manager of and owned an equitable interest in Liberty, that Ms. Gao handled Liberty's funds while Mr. Kirk focused on recruiting new investors, that in a typical transaction investors would wire money to Ms. Gao, and that both Mr. Kirk and Ms. Gao had signature authority over Liberty's accounts and the authority to transfer Liberty's funds. *Id.* at ¶36.

Based on the foregoing allegations, HCL asserts the following state law claims:

1) Breach of written contract against Mr. Kirk and Ms. Gao;
2) Breach of oral contract against Mr. Kirk and Ms. Ho;
3) Breach of the implied covenant of good faith and fair dealing against Mr. Kirk, Ms. Gao, and Ms. Ho;
4) Intentional misrepresentation against Crystal, Mr. Kirk, Ms. Gao, and Ms. Ho;
5) Negligent misrepresentation against Crystal, Mr. Kirk, Ms. Gao, and Ms. Ho;
6) Conversion against Crystal, Mr. Kirk, Ms. Gao, and Ms. Ho;
7) Breach of fiduciary duty against Mr. Kirk, Ms. Gao, and Ms. Ho;
8) Fraudulent concealment against Ms. Ho;
9) Negligence against Crystal, Mr. Kirk, Ms. Gao, and Ms. Ho; and
10) Quasi-contractual relief for constructive trust against Crystal, Mr. Kirk, Ms. Gao, and Ms. Ho.

HCL also seeks a declaration (1) that the Stipulation providing that title to the Hotel would revest in the name of Crystal is void and a declaration (2) that HCL's Deed of Trust recorded against the Hotel is valid, being supported by consideration in the form of the $28.375 million refund owed to the Lee Investors.

**The Court's Order to Show Cause**

On July 11, 2017, the Court issued an order requiring HCL to submit further briefing showing cause why the Court should not decline to exercise supplemental jurisdiction over certain of the claims asserted in the Counterclaim (the "Order to Show Cause") [Doc. No. 222]. The Court gave Ms. Ho the opportunity to respond to any arguments presented by HCL. The Court made the following preliminary findings in the Order to Show Cause:

> The issues raised in the "Second Amended Counterclaim" (the "Counterclaim") [Doc. No. 193] have only limited relevance to the Chapter 11 petition of Crystal Waterfalls, LLC ("Crystal"). The Counterclaim is relevant to Crystal's bankruptcy to the extent that it alleges that HCL 2011, LLC ("HCL") holds a valid security interest against the sale proceeds of property located at 1211 East Garvey Street, Covina, California (the "Hotel"), and to the extent that it seeks a declaration that Crystal holds the sale proceeds of the Hotel in constructive trust for the benefit of HCL and the Lee Investors.[1] The Counterclaim's allegations that Lucy Gao, Benjamin Kirk, and Shelby Ho owe compensatory and punitive damages to HCL for diverting funds invested by Sophia Huang and the Lee Investors are not relevant to Crystal's bankruptcy.
>
> In its Opposition to Ms. Ho's Motion to Dismiss, HCL argues that the Lee Investors, rather than HCL, are the real party in interest. Sophia Huang, who acted as an intermediary between Liberty and the Lee Investors, Counterclaim at ¶¶ 14–15, is pursuing in the Los Angeles Superior Court litigation against all the counter-defendants who are involved in this action. *See Shao Fang Huang et al. v. Tsai-Luan Ho et al.*, LASC Case No. KC 068184 (the "State Court Action"). The State Court Action involves similar claims for relief as those asserted in the Counterclaim, and HCL has acknowledged that it is not the real party in interest to the Counterclaim. Consequently, pursuant to 28 U.S.C. §1367(c)(2), the Court is prepared to decline exercising supplemental jurisdiction over the Counterclaim to the extent that the Counterclaim asserts claims not relevant to Crystal's bankruptcy petition. In the Court's view, the

---

[1] Terms not defined herein have the meaning set forth in the Motion to Dismiss.

  claims pertaining to the diversion of funds substantially predominate over the claims
  pertaining to the security interest that are relevant to Crystal's bankruptcy and over which
  the Court has original jurisdiction. *See* 28 U.S.C. §1367(c)(2) (providing that he Court
  "may decline to exercise supplemental jurisdiction over a claim … if the claim
  substantially predominates over the claim or claims over which the district court has
  original jurisdiction").

Order to Show Cause at 1.

  The Order to Show Cause also vacated the July 12, 2017 hearing on Ms. Ho's motion seeking to dismiss certain of the claims asserted in the Counterclaim. The Court explained that it would issue a ruling on the motion to dismiss concurrently with its ruling upon whether to exercise supplemental jurisdiction.

### Summary of the Additional Briefing Submitted by HCL and Ms. Ho[2]

  In response to the Order to Show Cause, HCL argues that its state law claims arise from the same transaction or occurrence as the claim over which the Court has original jurisdiction. As a result, HCL contends that the state law claims are compulsory under Civil Rule 13. HCL argues that the Court should exercise supplemental jurisdiction over the state law issues, on the grounds that otherwise HCL would be required to incur additional fees litigating those claims before the state court. In the event the Court declines to exercise supplemental jurisdiction, HCL requests leave to amend its counterclaim to join the individual members of the Lee Investors as counter-claimants, and join Liberty as a counter-defendant. HCL asserts that joinder of these parties will facilitate adjudication of the Counterclaim.

  Ms. Ho argues that the Court should not exercise supplemental jurisdiction over the state law issues. Ms. Ho disputes HCL's assertion that the state law claims are compulsory under Civil

---

[2] The Court has reviewed the following papers submitted in response to the Order to Show Cause by HCL and Ms. Ho:
  1) Response to Court Order Requiring HCL to Submit Further Briefing Showing Cause Why the Court Should Not Decline to Exercise Supplemental Jurisdiction Over Certain of the Claims Asserted in the Counterclaim (the "Response") [Doc. No. 230];
  2) Reply to Response to Court Order Requiring HCL to Submit Further Briefing Showing Cause Why the Court Should Not Decline to Exercise Supplemental Jurisdiction Over Certain of the Claims Asserted in the Counterclaim (the "Reply") [Doc. No. 231];
  3) Sur-Reply to Reply to Response Court Order Requiring HCL to Submit Further Briefing Showing Cause Why the Court Should Not Decline to Exercise Supplemental Jurisdiction Over Certain of the Claims Asserted in the Counterclaim (the "Sur-Reply") [Doc. No. 232]; and
  4) Supplemental Brief Regarding Order Requiring HCL to Submit Further Briefing Showing Cause Why the Court Should Not Decline to Exercise Supplemental Jurisdiction Over Certain of the Claims Asserted in the Counterclaim (the "Supplemental Brief") [Doc. No. 235].

The Court notes under the briefing schedule imposed by the Order to Show Cause, the submission of the Sur-Reply and Supplemental Brief was not authorized. However, the Court will not exclude the Sur-Reply and Supplemental Brief from consideration; since both HCL and Ms. Ho filed unauthorized papers, no prejudice results from the Court's consideration of the unauthorized filings.

Rule 13. According to Ms. Ho, Crystal's initial Complaint focused on whether the Hotel is property of the estate and the interpretation of the Stipulation. Ms. Ho maintains that the Counterclaim's state law claims are not compulsory because those claims greatly expand the timeline for the dispute and includ numerous allegations that have no connection to the issue of whether the Hotel is property of the estate. Ms. Ho asserts that HCL should not be given leave to amend the Counterclaim a third time.

## II. Findings and Conclusions

Title 28 U.S.C. §1367(a) provides in relevant part:
> [T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Title 28 U.S.C. §1367(c)(2) provides that a court may decline to exercise supplemental jurisdiction over a claim if "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction."

With respect to supplemental jurisdiction—also known as pendent jurisdiction—the Supreme Court has stated:
> *[United Mine Workers of Am. v.] Gibbs* [383 U.S. 715 (1966)] drew a distinction between the power of a federal court to hear state-law claims and the discretionary exercise of that power. The *Gibbs* Court recognized that a federal court's determination of state-law claims could conflict with the principle of comity to the States and with the promotion of justice between the litigating parties. For this reason, *Gibbs* emphasized that "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." Under *Gibbs,* a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims…. As articulated by *Gibbs,* the doctrine of pendent jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values.

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349–50 (1988) (internal citations omitted).

"Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law…. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966).

Here, the Court has original jurisdiction over the Counterclaim's eleventh claim seeking declaratory relief as to the validity of the lien encumbering the Hotel. As HCL acknowledges, the first through tenth claims are state law claims over which the Court has supplemental, but not original, jurisdiction.[3] HCL argues that the one claim over which the Court has original

---

[3] *See* Response at 6 ("The Court has original jurisdiction over the eleventh cause of action for determining the validity of HCL's lien on the Hotel, which is property of the bankruptcy estate. The first to tenth causes of action are state claims asserted against Kirk, Gao, and Ho.").

jurisdiction predominates over the ten state law claims over which the Court has supplemental jurisdiction. HCL reasons that the one federal claim predominates because in order to prove the validity of its lien, HCL will be required to present the same evidence as it must present in order to prove its state law claims.

To determine whether pendent claims substantially predominate over the claims as to which the Court has original jurisdiction, the Court may examine the claims through three different perspectives. As explained in *Gibbs*, predominance may be assessed (1) in terms of proof, (2) in terms of the scope of the issues raised, or (3) in terms of the comprehensiveness of the remedy sought. *Gibbs*, 383 U.S. at 726–27. With respect to the first category, the scope of the proof required, HCL correctly notes that the pendent claims do not predominate, given that the evidence required to prove the ten pendent claims substantially overlaps with the evidence required to prove the one non-pendent claim.

But with respect to the second and third categories—the scope of the issues raised and the comprehensiveness of the remedy sought—the pendent claims do predominate over the non-pendent claims. The Counterclaim asserts ten pendent claims: (1) breach of written contract; (2) breach of oral contract; (3) breach of the implied covenant of good faith and fair dealing; (4) intentional misrepresentation; (5) negligent misrepresentation; (6) conversion; (7) breach of fiduciary duty; (8) fraudulent concealment; (9) negligence; and (10) quasi-contractual relief. On pendent claims one through ten, the Counterclaim seeks compensatory damages in an amount of no less than $28.375 million; on pendent claims four, six, seven, and eight, the Counterclaim additionally seeks punitive damages. The one claim over which the Court has original jurisdiction seeks declarations that HCL's Deed of Trust against the Hotel is valid and that the Stipulation providing that title to the Hotel is vested in Crystal rather than Washe is void. In terms of the scope of the issues raised, the ten pendent claims—which raise a plenitude of state law issues—clearly predominate over the legal issues raised in the eleventh claim for declaratory relief. In terms of the comprehensiveness of the remedy, the ten pendent claims also predominate. The pendent claims seek imposition of substantial compensatory and punitive damages, whereas the claim over which the Court has original jurisdiction seeks declaratory relief with respect to a Stipulation the Court approved and declaratory relief with respect to the validity of a Deed of Trust against property of the estate.

The Court finds it appropriate to make the predominance determination based upon the second and third *Gibbs* categories, rather than based upon the first category. With regard to the first category—the scope of the proof required—HCL argues that if the Court declines to exercise supplemental jurisdiction, it will be required to undergo the expense of presenting its case in both state and federal courts. HCL's argument regarding expense falls flat in view of an action currently pending in the Los Angeles Superior Court, *Shao Fang Huang et al. v. Tsai-Luan Ho et al.*, LASC Case No. 068184 (the "State Court Action"). The State Court Action involves all the counter-defendants who are involved in this action, and is being prosecuted by Sophia Huang, one of the Lee Investors. The State Court Action asserts many of the same claims for relief that are asserted in the Counterclaim. In its Opposition to Ms. Ho's Motion to Dismiss, HCL argues that the Lee Investors, rather than HCL, are the real party in interest. The fact that one of the Lee Investors is already pursuing litigation against the counter-defendants in the State Court undercuts HCL's contention that the Court should exercise supplemental jurisdiction to spare HCL the expense of duplicate litigation.

Of course, HCL and the Lee Investors are different legal entities. But the exhibits attached to the Counterclaim show that Hsin-Chih Lee, one of the Lee Investors, was the managing member

of HCL at the time the relevant transactions occurred. For the sole purpose of assessing the validity of HCL's arguments regarding the expense of duplicate litigation, the Court finds that HCL and the Lee Investors are essentially the same entity. Therefore, the fact that another one of the Lee Investors—Ms. Huang—is presently prosecuting the State Court Action shows that HCL's complaints about being subjected to the additional expenses of duplicate litigation lack credibility. The Lee Investors, who stand to benefit from any relief granted to HCL, have already voluntarily subjected themselves to the expenses of duplicate litigation.

Furthermore, resting the predominance determination upon the second and third categories enables the Court to heed *Gibb*'s counsel that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Gibbs*, 383 U.S. at 726–27 (1966). Were the Court to exercise supplemental jurisdiction, it would be required to interpret state law pertaining to breach of contract, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, intentional misrepresentation, negligent misrepresentation, conversion, fraudulent concealment, negligence, and quasi-contractual relief.

Based upon the foregoing, the Court declines to exercise supplemental jurisdiction over the first through tenth claims for relief in the Counterclaim.[4] The first through tenth claims are dismissed without prejudice. Those claims are not compulsory. Although there is some factual overlap between the first through tenth claims and the eleventh claim over which the Court has jurisdiction, the first through tenth claims greatly expand the timeline of the dispute and therefore do not arise out of the same transaction or occurrence for purposes of Civil Rule 13. Because the Court declines to exercise supplemental jurisdiction over the first through tenth claims, Ms. Ho's motion to dismiss the second through sixth and eighth through tenth claims is denied as moot.

HCL's request for leave to amend is denied. While Civil Rule 15(a)(2) provides that the "court should freely give leave [to amend] when justice so requires," the liberality with which leave to amend is granted is subject to several limitations. *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). In particular, leave "need not be granted where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay." *Id.* Here, HCL has had three opportunities to plead the allegations in the Counterclaim. Ms. Ho filed a motion seeking to dismiss HCL's First Amended Counterclaim; HCL responded to that motion to dismiss by filing the Second Amended Counterclaim. Allowing HCL to amend the Counterclaim a third time in

---

[4] In the Order to Show Cause, the Court made a preliminary finding that the issue of whether Crystal holds the sale proceeds of the Hotel in constructive trust for the benefit of HCL and the Lee Investors was relevant to Crystal's bankruptcy. The declaration that the sale proceeds are held in constructive trust is sought in connection with the Counterclaim's tenth claim, which seeks imposition of a constructive trust against Crystal, Mr. Kirk, Ms. Gao, and Ms. Ho. As discussed, the Court declines to exercise supplemental jurisdiction over the constructive trust claim, which arises under state law. The exercise of supplemental jurisdiction over this state law claim would not be appropriate given that HCL's eleventh claim, over which the Court has original jurisdiction, provides HCL with essentially the same remedy as the tenth claim. If HCL prevails upon its claim that it holds a valid lien encumbering the Hotel's sales proceeds, then HCL would likely be entitled to receive those sales proceeds in connection with Crystal's Chapter 11 Plan.

response to Ms. Ho's second motion to dismiss would prejudice Ms. Ho and would create undue delay.

    The Court will enter an order consistent with this Memorandum of Decision.

###

Date: August 14, 2017

Ernest M. Robles
United States Bankruptcy Judge